# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KRISTYNA O.[1]**, | Case No. 6:22-cv-769-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine Eitenmiller and Brent Wells, 474 Willamette Street, Eugene, Oregon 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Kristyna O. (Plaintiff) brings this action under § 205(g) of the Social Security Act (Act),

*as amended*, 42 U.S.C. §405(g), to obtain judicial review of a final decision of the Commissioner

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

of the Social Security Administration (Commissioner) denying Plaintiff's application for

Supplemental Security Income (SSI) under Title XVI of the Act. For the reasons stated below,

the Court AFFIRMS the decision of the Commissioner.

## STANDARD OF REVIEW

A district court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also*

*Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more

than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554

F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

Plaintiff first filed an application for SSI on March 14, 2018, alleging a disabililty onset date of February 13, 2018. AR 67. Plaintiff was born on February 2, 1985, and she was 33 years old on the alleged onset date. *Id.* Plaintiff's claim was denied on August 14, 2018, and again upon reconsideration on November 30, 2018. AR 15, 75, 88. Plaintiff filed a written request for a hearing on December 15, 2018. AR 15. Plaintiff then appeared and testified by telephone before Administrative Law Judge (ALJ) Robert Frank Spaulding on May 11, 2021. AR 30-65. The ALJ issued an unfavorable decision finding Plaintiff not disabled under the Social Security Act and therefore ineligible for SSI. AR 13-25. Plaintiff sought review by the Appeals Council. AR 1. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id.* Plaintiff now seeks judicial review of the ALJ's decision by this Court under 42 U.S.C. § 405(g).

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step could be dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" (RFC). This is an assessment of
        work-related activities that the claimant may still perform on a regular and
        continuing basis, despite any limitations imposed by her impairments. 20
        C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After
        the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, she is
        disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant can perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since the alleged onset date. AR 15. At step two, the ALJ found that Plaintiff's right ankle

fracture status post open reduction internal fixation and right ankle impingement constituted

severe impairments, meaning they significantly limited Plaintiff's ability to perform basic work

activities. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment that meets or

equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

Between steps three and four, the ALJ formulated Plaintiff's RFC. The ALJ found that

Plaintiff:

> . . . has the residual functional capacity to perform sedentary work
> as defined in 20 CFR 416.967(a) except she can occasionally push
> and pull with the right lower extremity; never climb ramps, stairs,
> ladders, ropes, or scaffolds; frequently balance and stoop; and
> never kneel, crouch, or crawl.

AR 18. At step four, the ALJ found that Plaintiff could not perform past relevant work. AR 23.

At step five, the ALJ found, consistent with vocational expert testimony, that Plaintiff could

perform work as a charge account clerk, with 75,000-100,000 jobs nationally, as a document

preparer, with 60,000 jobs nationally, or as a final assembler, with 28,000 jobs nationally.

AR 24. The ALJ then concluded that Plaintiff is not disabled. AR 25.

## DISCUSSION

In seeking review, Plaintiff argues that the ALJ erred by: (A) failing to provide clear and

convincing reasons for discrediting Plaintiff's symptom testimony; and (B) finding unpersuasive

the opinions of Plaintiff's treating medical providers.

## A.  Plaintiff's Testimony

### 1.  Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not

show that her impairment could reasonably be expected to cause the severity of the symptom she

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by
SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy.
SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166
(Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in
this Opinion and Order.

has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *See Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case

record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. The Commissioner also recommends assessing: (1) the claimant's statements

made to the Commissioner, medical providers, and others on the claimant's location, frequency,

and duration of symptoms, the effect of the symptoms on daily living activities, factors that

precipitate and aggravate symptoms, medications, and treatments used, and other methods used

to alleviate symptoms; (2) medical source opinions, statements, and medical reports about the

claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily

activities, and other information about the intensity, persistence, and limiting effects of an

individual's symptoms; and (3) non-medical source statements, considering how consistent those

statements are with the claimant's statements about his or her symptoms and other evidence in

the file. *See id.* at \*6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See*

*Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical

evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

On February 13, 2018, Plaintiff fell and twisted her right ankle. AR 253. An x-ray

showed a bimalleolar fracture with mild-to-moderate displacement at the mortise. *Id.* Two weeks

later, Plaintiff underwent surgery; seven screws and a plate were installed. AR 322-35. Plaintiff

began physical therapy in June 2018 and after making slow progress, she was discharged in

January 2019. AR 340, 487. Because Plaintiff was still experiencing pain, she underwent

hardware removal surgery in June 2019. AR 521-24. Plaintiff attended physical therapy again

and was discharged in September 2019. Plaintiff did not seek further treatment for her ankle until

January 2021. AR 556.

At the May 2021 hearing, Plaintiff testified that she cannot work because she "can't stand

on [her] feet for any period of time without needing to sit down." AR 43. She also testified that

her foot swells so severely that she cannot wear a shoe. AR 43-44. Plaintiff testified that she

must keep her foot elevated to manage the pain in her ankle. AR 44.

The ALJ found Plaintiff's statements regarding the intensity and limiting effect of her symptoms not entirely consistent with the evidence in the record. AR 19. Specifically, the ALJ gave four reasons for discounting Plaintiff's subjective symptom testimony: (1) improvement with treatment; (2) conservative treatment; (3) inconsistency with objective medical evidence and clinical examinations; and (4) inconsistency with Plaintiff's activities of daily living (ADL). AR 19-21.

The Court finds the first three reasons to be clear and convincing, and supported by substantial evidence in the record. Although the Court disagrees with the ALJ's finding regarding Plaintiff's ADL, the ALJ's decision evaluating Plaintiff's testimony is upheld because the other three reasons meet the relevant legal standard. *See Batson*, 359 F.3d at 1197.

### a. Plaintiff's Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ cited to multiple medical records documenting that Plaintiff's condition improved with surgery and physical therapy. AR 19-20. Substantial evidence in the record supports the ALJ's finding here. As the ALJ noted, Plaintiff temporarily used a rolling walker

after her injury, but by December 2018, "she was only using a cane 'intermittently,' and with decreasing frequency." AR 20; *see* AR 404, 421, 455. After the February 2018 surgery, Plaintiff was fitted for a walking boot and was told that she could not be weight-bearing on her right foot for six to eight weeks while she recovered. AR 314, 326-27. By April 2018, her doctor instructed that she could be 50% weight-bearing in the boot. AR 333. And by May 2019, her doctor encouraged her to be 100% weight-bearing in the boot. AR 335. Plaintiff transitioned to crutches and then to a single crutch. AR 352. By August 2018, Plaintiff had decreased the use of the crutch and was rarely using a cane. AR 395, 402. There is no indication in the record that Plaintiff continued to use a cane at all after December 2018. AR 455.

The ALJ also noted that Plaintiff's pain had decreased significantly. AR 20. Immediately following her injury, in February 2018, Plaintiff reported that her pain was an eight on a ten-point scale. AR 325. When Plaintiff began physical therapy in June 2018, her pain was a seven out of ten. AR 345. However, from October 2018 until June 2019, Plaintiff consistently reported her pain at between a two and a four out of ten. AR 421, 455, 460, 477, 487, 505, 518. Plaintiff was in a considerable amount of pain immediately following surgery in June 2019, but her pain levels quickly subsided to the pre-surgery levels. AR 525, 535, 537. In January 2021, Plaintiff reported her pain at a two out of ten. AR 556.

Plaintiff made slow but measurable gains with physical therapy. AR 357. At discharge from her first round of physical therapy, Plaintiff had met five out of six of her goals and saw a 14% improvement in functional mobility. AR 489. At discharge from the second round of physical therapy, Plaintiff had met all six of her goals and saw improvement in gait mechanics. AR 544.

Plaintiff's own statements acknowledged this improvement. In December 2018, she told her primary care provider, Dr. Bailey, that physical therapy was "helping a lot." AR 465. After her second surgery, Plaintiff reported that her ankle pain had improved and that her ankle was moving more. AR 529. In September 2019, she indicated that she was pleased with the results from physical therapy and that she believed she was ready for discharge. AR 588. Plaintiff also consistently reported walking more and, in September 2019, reported that she had "spent a lot of time walking and dancing." AR 540, 543.

The record thus reflects that Plaintiff's pain and mobility improved with treatment, inconsistent with Plaintiff's subjective symptom testimony.

### b.   Failure to Seek Treatment and Receiving Conservative Treatment

The ALJ found Plaintiff's treatment history inconsistent with her subjective symptom testimony. AR 19-20. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." *See* 20 C.F.R. § 404.1529(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. § 404.1530(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. § 404.1530(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Therefore, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* SSR 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that

the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

Additionally, routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

As the ALJ first noted, outside of post-surgery recovery, until 2021, Plaintiff treated her "allegedly disabling chronic pain" with only Diclofenac gel and over the counter pain medications. AR 19. The ALJ found this course of treatment "does not suggest the presence of an impairment that is more limiting." *Id.* Following Plaintiff's discharge from physical therapy in September 2019, Plaintiff did not seek any medical treatment for her ankle until January 2021. Then, in January 2021, Plaintiff presented to Dr. Zarkou with a "new complaint of right lower extremity pain." AR 556. A cortisone injection abated the pain for several months. AR 559. In March 2021, Plaintiff saw her primary care provider so that Dr. Bailey could accurately fill out the disability opinion form. AR 583. Based on Plaintiff's reports of chronic pain at this appointment, Dr. Bailey prescribed gabapentin. AR 565. Substantial evidence supports the ALJ's finding that Plaintiff's treatment history undermined her subjective symptom testimony.

### c.   Objective Medical Evidence and Clinical Examinations

The ALJ also found Plaintiff's testimony inconsistent with objective medical evidence and clinical examinations. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Plaintiff testified that every other day, her foot swells so significantly that she cannot wear a shoe. AR 43-44, 51. However, as the ALJ noted, clinical exams consistently found, at most, minimal swelling. AR 20; *see* AR 326, 332, 333, 334, 346, 377, 402, 405, 421, 422, 455, 491, 507, 520, 525, 527, 529, 535, 556, 558. The only exams that documented moderate swelling were on February 20 and 26, 2018, shortly after Plaintiff was injured. AR 314, 320. Once Plaintiff was no longer wearing the walking boot, she consistently presented at medical appointments with normal shoes; there are no provider notes suggesting that at any point she could not wear a shoe. AR 402, 420.

Further, the ALJ noted that "the lack of severe findings and signs tends to cut against the [Plaintiff's] allegations." AR 21. Here, the ALJ cited Plaintiff's most recent diagnostic imaging, which showed minimal joint space narrowing of the right tibiotalar joints and good alignment of the right tibiotalar joint. AR 559. The ALJ also cited Plaintiff's January 2021 physical exam, which showed no vascular dysfunction and only mild edema. AR 556. Plaintiff's muscle strength was intact and although she displayed some pain with palpation and dorsiflexion, there was good

alignment of the right foot and ankle. *Id.* Substantial evidence supports the ALJ's findings here as well.

### d. Activities of Daily Living

Multiple times in his analysis, the ALJ points to Plaintiff's gym activity as evidence that undermines her subjective symptom testimony. AR 19, 20. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

As the ALJ notes, Plaintiff began going to the gym in December 2018. AR 19. At the gym, Plaintiff rode a stationary bike and worked on leg extension, leg curls, and leg presses. AR 605. But the ALJ fails to account for the fact that Plaintiff's activity at the gym was the prescribed home treatment from her physical therapy. *See* AR 603. Plaintiff's daily gym activity is evidence that she was following her prescribed treatment, not evidence of inconsistent testimony. However, because the ALJ provided three other clear and convincing reasons, each supported by substantial evidence, the Court upholds the ALJ's decision as to Plaintiff's subjective symptom testimony.

## B.    Medical Opinions

### 1.   Standards

Plaintiff filed her application for benefits on March 14, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that

the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how they considered these secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to

such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 2. Analysis

Plaintiff's orthopedic doctor, David Zarkou, DPM, and her primary care provider, Rachel Bailey, DO, each provided an opinion regarding Plaintiff's limitations. *See* AR 434-41. 743-48, 750. Plaintiff argues that the ALJ erred in finding these opinions unpersuasive.

### a. Dr. Zarkou

Plaintiff saw Dr. Zarkou on February 20, 2018, shortly after her injury. AR 312. After performing surgery, Dr. Zarkou then saw Plaintiff regularly until fall 2019, the same time that Plaintiff completed physical therapy. *See* AR 318, 325, 327, 331, 333, 334, 376, 402, 420, 455, 491, 505, 508, 518, 525, 527, 529, 535. Plaintiff did not see Dr. Zarkou again until January 2021. AR 556.

In March 2021, Dr. Zarkou opined that Plaintiff would have substantial difficulty working a full-time job, even if it were sedentary. AR 743. He noted that while many people generally recover more easily from ankle injuries and surgery, people with depression and anxiety are more likely to experience long-term pain. AR 744. Dr. Zarkou opined that Plaintiff would need to work at a reduced pace and that she would be capable of a low stress job "as long as it requires minimal time on her feet." AR 744-45. He noted that Plaintiff would do better at a desk job. AR 745. Dr. Zarkou also noted that Plaintiff's symptoms often interfered with her concentration. Dr. Zarkou opined that Plaintiff could stand or walk for two to three hours over an eight hour workday and that she could sit for six hours during an eight hour workday. AR 745. Finally, Dr. Zarkou opined that Plaintiff has been continuously unable to work since January 25, 2021. AR 748.

PAGE 16 – OPINION AND ORDER

The ALJ found parts of Dr. Zarkou's opinion persuasive, but on the whole found it "poorly supported" and "significantly inconsistent" with treatment records. AR 22. As the ALJ noted, when asked what medical findings supported Plaintiff's limitations regarding standing and sitting in an eight-hour workday or how much Plaintiff could lift, Dr. Zarkou gave no answer. AR 746, 747. The ALJ also cited several inconsistencies between Dr. Zarkou's opinion, his treatment records, and Plaintiff's own statements. AR 22. In August 2019, after Plaintiff underwent two surgeries and two rounds of physical therapy, Dr. Zarkou had "no restrictions on her activity level at this point." AR 536. While Dr. Zarkou opined that Plaintiff's symptoms would often interfere with her concentration, Plaintiff does not endorse concentration issues, stating instead that she can pay attention for hours. AR 225. And finally, the ALJ noted the inconsistency between Plaintiff's alleged onset date of February 13, 2018 and Dr. Zarkou's date of January 25, 2021. The ALJ's finding regarding Dr. Zarkou's opinion is supported by substantial evidence.

### b. Dr. Bailey

As Plaintiff's primary care provider, Dr. Bailey saw Plaintiff intermittently between October 2018 and March 2021. AR 422, 465, 494, 565, 583. However, the vast majority of these visits were for acute medical issues unrelated to Plaintiff's disability claim.

In March 2021, Dr. Bailey opined that Plaintiff was "unable to handle day to day self-care." AR 436. She opined that Plaintiff's symptoms very frequently interfered with her attention and concentration. AR 435. Dr. Bailey opined that Plaintiff was able to stand for less than two hours in an eight-hour workday and that she was able to sit for less than two hours in an eight hour workday. AR 436. She further opined that Plaintiff would need to lie down at least five to six times a day for pain relief. AR 437. Dr. Bailey anticipated that Plaintiff would need to be absent from work more than four days a month. AR 440. Finally, in a brief letter dated May 4,

2021, Dr. Bailey opined that Plaintiff "needs to keep her right leg elevated throughout the day due to swelling." AR 750.

The ALJ found Dr. Bailey's more restrictive opinion to be even less persuasive than Dr. Zarkou's. AR 22. First, the ALJ found it unsupported, as Dr. Bailey "did not identify clinical findings and objective signs." *Id.* When asked what clinical findings supported her opinion, Dr. Bailey noted only that Plaintiff's pain had returned following the cortisone injection and that Plaintiff needed to elevate her foot. AR 434, 437. The ALJ also noted that Dr. Bailey's opinion that Plaintiff needs to keep her leg elevated due to swelling was unsupported by and inconsistent with the treatment records that consistently showed minimal to no swelling. AR 23. As with Dr. Zarkou's opinion, the ALJ found Dr. Bailey's opinion regarding Plaintiff's concentration to directly conflict with Plaintiff's own statement. AR 23. The ALJ also found Dr. Bailey's opinion to be inconsistent with Plaintiff's contemporaneous reports of pain as a two out of ten. AR 23; *see* AR 556. And finally, the ALJ found Dr. Bailey's opinion inconsistent with Plaintiff's ADL. AR 23. While Dr. Bailey opined that Plaintiff could not handle day-to-day self-care or handle chores at home, Plaintiff's Function Report states that she prepares meals, does dishes, and takes care of her own personal hygiene, with accommodations. AR 222. The ALJ's findings regarding Dr. Bailey's opinion are also supported by substantial evidence.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 29th day of June, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge